UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO, EASTERN
DIVISION

| | | |
|---|---|---|
| NATIONAL MENTOR HOLDINGS, INC., C/O REGISTERED AGENT CORPORATION SERVICE COMPANY 84 STATE STREET BOSTON, MASSACHUSETTS 02109 | ) ) ) ) ) ) | Case No.  Judge: |
| Plaintiff, | ) ) | |
| V. | ) ) | |
| CARESOURCE NETWORK PARTNERS, LLC 230 NORTH MAIN STREET DAYTON, OHIO 45402 | ) ) ) ) ) | |
| Defendant. | ) | |

**PETITION TO ENJOIN ARBITRATION AND COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff National Mentor Holdings, Inc. ("National Mentor" or "Plaintiff"), by and through its attorneys, L'Hommedieu & McGrievy, LLC, for its Complaint against Defendant CareSource Network Partners, LLC ("CareSource" or "Defendant"), states as follows:

**NATURE OF ACTION**

1.     Plaintiff brings this action to enjoin an arbitration that Defendant has initiated before the American Arbitration Association ("AAA"), captioned *CareSource Network Partners, LLC* vs. Mentis Ohio, LLC d/b/a NeuroRestorative Ohio and National Mentor

Holdings, Inc d/b/a Sevita, Case No. 01-25-0002-6638 (the "Arbitration"), insofar as the arbitration seeks the participation of Plaintiff as a party.  Plaintiff has not consented to arbitration with Defendant and may not be compelled to resolve any disputes in that forum.

## PARTIES

2.      National Mentor Holdings, Inc. is a corporation incorporated in the State of Delaware.

3.      CareSource Network Partners LLC is a limited liability company organized under the laws of the State of Ohio. Upon information and belief, all members of CareSource Network Partners LLC are citizens of the State of Ohio.

## JURISDICTION AND VENUE

4.       This action seeks to enjoin an arbitration pursuant to O.R.C. § 2711.03, to obtain a declaratory judgment pursuant to 28 U.S.C.  2201 et seq. and Fed. R. Civ. P. 57, and to obtain an injunction pursuant to the All-Writs Act and Fed. R. Civ. P. 65(a).

5.      This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of the state of Delaware and a citizen of the state of Ohio. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this judicial district because Defendant is organized under the laws of the state of Ohio, a substantial part of the events giving rise to the claim occurred in this district, and a substantial part of the property that is the subject of the action is

situated in this district.

## FACTS

7.     Plaintiff's affiliate, Mentis Ohio, LLC ("Mentis") operated a rehabilitation facility located at 3625 Marsh Road, Stow, Ohio 44224 (the "Facility"). Plaintiff **is not** the direct owner of Mentis and has no membership interest in the entity. It is an affiliate, with multiple degrees of entity separation between Plaintiff and Mentis.

8.     Defendant is a Managed Care Organization which contracts with healthcare providers to, among other things, administer payments for healthcare services for the Ohio Department of Medicaid. Mentis and Defendant entered into the CareSource Provider Agreement dated October 2019 as amended in September 2020 (collectively the "Agreement"). See Exhibit A.  Plaintiff is not a party to the Agreement.

9.     Mentis received payments for services provided at the Facility from Defendant until the evacuation and closure of the Facility in July 2024 due to structural issues of the building. Prior to the closure of the Facility, Mentis notified state authorities that the Facility was closing.

10.     In September 2024, Defendant sent its first demand letter notifying Mentis that Mentis owes $1,851,906.00 in "overpayments" made by Defendant on the basis of an audit that allegedly showed that Mentis was incorrectly billing certain claims, or failing to provide certain additional specific records of the care provided. See Exhibit B.[1]

11.     Defendant initiated Arbitration on June 3, 2025. See Exhibit C.

12.     Within the Arbitration, Defendant alleges that Mentis breached the

---

[1] Exhibit B has been redacted to remove patient- identifying information.

3

Agreement. See Exhibit A. Due to this alleged breach, Defendant claims that it has been damaged in the amount of $1,851,906.00 (the "Requested Damages"). See Exhibit C.

13.     Defendant further makes a claim of unjust enrichment against Plaintiff in the same amount of the Requested Damages. See Exhibit C.

14.     Plaintiff is not a party to the Agreement. See Exhibit A. As a result, Plaintiff did not agree to the arbitration clause found in Section 10 of the Agreement. See Exhibit A.

15.     Critically, Section 10 of the Agreement contains no delegation clause — that is, no provision that clearly and unmistakably assigns to an arbitrator the authority to determine questions of arbitrability. In the absence of such a provision, the threshold question of whether a party is bound by an arbitration agreement is a question of law reserved exclusively for the Court. The Panel therefore lacks the authority to determine its own jurisdiction over Plaintiff, and any purported exercise of such authority — including the issuance of discovery orders directed at Plaintiff prior to a ruling on the Objection — is without legal basis.

16.     In its initial response to the Arbitration, Plaintiff filed an objection on June 25, 2025, regarding the arbitrability of the claim made against the Plaintiff with the AAA (the "Objection"). See Exhibit D.

17.     To date, the panel of arbitrators appointed by the AAA (the "Panel") has not made a decision on the Objection.

18.     On May 14, 2026, the Panel held a preliminary hearing (the "Hearing").

19.     At the Hearing, counsel for Plaintiff raised the issue regarding the scope of

4

the Panel's jurisdiction, including whether the Panel possessed jurisdiction to resolve Defendant's claim against Plaintiff.  Plaintiff's counsel suggested that the issue was more appropriately decided in a declaratory judgment action.

20.     On May 19, 2026, the Panel issued a Preliminary Hearing Report and Scheduling Order No.1 (the "Scheduling Order"). Exhibit E Within the Scheduling Order, the Panel concluded that Defendant may immediately conduct one Rule 30(B)(5) duces tecum corporate deposition of Plaintiff, not to exceed four hours to gather evidence to support its response to the Objection.

21.     If the deposition under the Scheduling Order is allowed to take place, Plaintiff will be subject to unnecessary discovery, thereby opening proprietary information held by a privately-owned corporation to Defendant so it may attempt to find some correlation that would allow Defendant to assert a far-reaching claim against Plaintiff.

22.     The Scheduling Order effectively inverts the proper legal burden by requiring Plaintiff — a non-signatory who has affirmatively objected to the Panel's jurisdiction — to submit to discovery in order to establish that it is not a proper party to the Arbitration. Arbitration is a matter of consent, and the burden of establishing a non-signatory's obligation to arbitrate rests squarely with the party seeking to compel arbitration. By permitting Defendant to conduct a corporate deposition of Plaintiff prior to any ruling on the Objection, the Panel has sanctioned a discovery process whose sole purpose is to allow Defendant to search for facts sufficient to support a jurisdictional basis that does not presently exist. This is precisely the type of impermissible fishing expedition that courts have consistently recognized as an independent basis for injunctive relief, as it permits a

party to manufacture jurisdiction through discovery rather than establish it as a threshold prerequisite to proceeding.

23. The Arbitration further subjects Plaintiff to unnecessary costs and legal fees as it is not a party to the Agreement and should not be subject to claims relating to the breach of the Agreement.

24. Most importantly, Plaintiff risks judgment in the amount of the Requested Damages being issued against Plaintiff despite (i) Plaintiff not being a party to the Agreement and (ii) Plaintiff not receiving a benefit from the funds that Defendant allegedly paid to Mentis under the Agreement as Plaintiff does not have direct ownership interest in Mentis.

25. The threat to Plaintiff's privacy, the costs of arbitration, and the risk of being held responsible for alleged damages that reach nearly two million dollars are legitimate, potential damages that Plaintiff may suffer.

26. Due to these potential liabilities and the stage at which the Arbitration sits under the Scheduling Order, the issue of the arbitrability of the claim made against Plaintiff is immediate and substantial.

27. Thus, the legal issue in front of this Court is an "Actual Controversy" that must be addressed prior to the Defendant deposing a representative of Plaintiff under the Scheduling Order.

## <u>COUNT I – OHIO ARBITRATION ACT</u>

28. Plaintiff incorporates the above paragraphs as if fully restated herein.

29. Pursuant to the authority granted by the Ohio Arbitration Act, O.R.C. §

2711.03, a court may examine whether a valid written agreement to arbitrate exists between the parties. Where no such agreement exists, a party cannot be compelled to submit to arbitration. Ohio courts recognize that a party who has not agreed to arbitrate a dispute has the right to seek judicial relief to prevent an arbitration from proceeding against it.

30.     Plaintiff has not entered into any agreement promising to arbitrate any disputes with Defendant.

31.     Plaintiff did not authorize Mentis to commit Plaintiff to arbitrate any disputes with Defendant.

32.     Plaintiff has not engaged in any conduct that could be construed to reflect consent to the jurisdiction of the AAA.  In fact, all of Plaintiff's conduct has been focused on denying that the Panel possesses any jurisdiction over Plaintiff.

33.     Accordingly, pursuant to O.R.C.  2711.03 and the Ohio Arbitration Act, O.R.C.  2711.01 et seq., this Court should enter an order enjoining Defendant from pursuing the Arbitration against Plaintiff, as no valid written agreement to arbitrate exists between Plaintiff and Defendant.

## COUNT II – DECLARATORY JUDGMENT

34.     Plaintiff incorporates the above paragraphs as if fully restated herein.

35.     This Court should determine the threshold question of whether the parties entered into an agreement to arbitrate their dispute.

36.     The Agreement's arbitration provision, found in Section 10, contains no delegation clause — no provision that clearly and unmistakably assigns to an arbitrator the authority to determine questions of arbitrability, including the threshold question of

whether a non-signatory may be compelled to participate in the arbitration. Where, as here, the parties have not clearly and unmistakably agreed to delegate arbitrability questions to an arbitrator, that determination is reserved for the Court. Accordingly, the Panel lacks any contractual or legal basis to rule on its own jurisdiction over Plaintiff, and this Court is the proper — and indeed the only proper — forum to resolve whether Plaintiff may be compelled to arbitrate Defendant's claims.

37. Plaintiff is not a party to and did not sign the Agreement between Mentis and Defendant.

38. Plaintiff did not agree to arbitrate any disputes with Defendant in the Agreement or any other agreements.

39. The Arbitration against Plaintiff is improper, as there is no basis in law or equity to compel Plaintiff to arbitrate claims in the AAA or any other arbitral forum.

40. Declaratory relief from this Court will resolve these controversies and limit the uncertainties.

41. As alleged herein, Plaintiff has presented a real, substantial, and immediate controversy regarding the rights, duties, and liabilities of the parties. Plaintiff, therefore, requests a declaratory judgment from this Court pursuant to 28 U.S.C. §§ 2201 et seq. and Fed. R. Civ. P. 57 that neither the Agreement nor any other agreement imposes an obligation on Plaintiff to arbitrate Defendant's claims before the AAA or any other arbitral forum.

## COUNT III – INJUNCTIVE RELIEF

42. Plaintiff incorporates the above paragraphs as if fully restated herein.

43. Defendant has asserted claims for damages against Plaintiff in the

Arbitration, and, unless enjoined, will continue to pursue such claims to judgment.

44.     To obtain a permanent injunction, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

45.     Unless Defendant is enjoined from pursuing its claims in the Arbitration, Plaintiff will suffer irreparable injury.  Being compelled to arbitrate a dispute one has not agreed to arbitrate is irreparable harm as a matter of law.  Monetary damages cannot adequately compensate for the loss of this right.

46.     The balance of hardships here tips decidedly in favor of Plaintiff's request for an injunction.  Defendant may seek any remedies against Plaintiff that it may have in any forum except arbitration.  Plaintiff, on the other hand, may lose valuable procedural protections by submitting to nonconsensual arbitration, given the narrow scope of judicial review of arbitration rulings. Additionally, Plaintiff is subjected to the deposition permitted under the Scheduling Order despite having no obligation to arbitrate.

47.     The public interest would be affirmatively served by enjoining Defendant from pursuing its claims against Plaintiff in the Arbitration.  The Ohio Arbitration Act imposes rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion.  This represents a legislative judgment, enacted into law, that the public interest is best served by barring arbitration when one party has not agreed to it.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests this Court enter an order as follows:

(1)     Declaring that the AAA and the Panel lack jurisdiction over Plaintiff in the Arbitration;

(2)     Preliminarily and permanently enjoining Defendant from pursuing claims against Plaintiff in the Arbitration, including any discovery directed at Plaintiff pursuant to the Scheduling Order; and

(3)     Granting such other relief as may be just and proper.

Respectfully submitted,

*/s/ Mary Louisa L'Hommedieu*
Mary Louisa L'Hommedieu (0066808)
L'HOMMEDIEU & McGRIEVY, LLC
30670 Bainbridge Road, Suite 201
Solon, Ohio 44139
Phone: (216) 635-0002
Fax:   (216) 635-0012
Email: mary@lmlegalgroup.com
*Attorney for National Mentor*
*Holdings, Inc.*

10